O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SCIENCE OF SKINCARE, LLC d/b/a INNOVATIVE SKIN CARE, a California Limited Liability Company<br><br>Plaintiff,<br><br>vs.<br><br>PHYTOCEUTICALS, INC., a New Jersey corporation, MOSTAFA M. OMAR, PH.D., an individual, DELTA OVERTON, an individual, PHYTO-C SKIN CARE, LLC, a North Carolina limited liability company, MOLLY PAGET, an individual, LAURA TERINO, an individual, and and DOES 1 through 10, inclusive,<br><br>Defendants.<br>_____ | Case No. CV 08-4470 ODW (SSx)<br><br>ORDER GRANTING DEFENDANT DELTA OVERTON'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT OVERTON'S MOTION FOR SUMMARY JUDGMENT |

## I.    INTRODUCTION

This action stems from the classic tale of employees from Company A who conspire to resign from their posts to join a competitor company, Company B. Company A in this case is Science of Skincare d/b/a Innovative Skin Care ("Innovative").  Innovative sells clinical skincare products under a series of specialized brands to certain exclusive and narrow retail customers.  It is alleged

1  that the individual defendants named in this action conspired to go to work for

2  Phytoceuticals, Inc. and also to create Phyto-C Skin Care, LLC.

3      After a number of employees left Innovative in May 2008, Plaintiff filed a

4  complaint in Los Angeles Superior Court in June 2008.  The action was removed

5  to this Court in July 2008.  Plaintiff's First Amended Complaint ("FAC"), filed

6  March 27, 2009, asserts the following seven claims for relief: (1) Breach of

7  Fiduciary Duty; (2) Breach of Non-Disclosure Agreement; (3) Intentional

8  Interference with Prospective Economic Advantage; (4) Misappropriation of Trade

9  Secrets; (5) Trade Libel; (6) Defamation; and (7) Violations of California Business

10  and Professions Code § 17200.

11     Pending before the Court is Defendant Delta Overton's Motion for Summary

12  Judgment or, in the alternative, Partial Summary Judgment, filed April 2, 2009.

13  On May 22, 2009, Plaintiff filed an Opposition, to which Defendant Overton

14  timely filed a Reply Brief.  The gist of Defendant Overton's Motion is that, while

15  she admits she left Innovative intending to form another company, her business

16  venture was never realized.  Accordingly, Defendant Overton argues that Plaintiff

17  has suffered no cognizable damages by her resigning from Innovative.  Plaintiff, on

18  the other hand, argues it did suffer damages as a result of Overton's unfair methods

19  in inducing twelve sales representatives to resign.  After reviewing the parties'

20  submissions and the case file, as well as the arguments advanced by counsel at the

21  hearing, the Court hereby GRANTS Defendant Overton's Motion for Partial

22  Summary Judgment and DENIES her Motion for Summary Judgment.

23  II.   FACTUAL BACKGROUND

24     Except where otherwise indicated, the following facts are undisputed.

25  Further, as a preliminary matter, the Court OVERRULES Defendant's Objections

26  to Plaintiff's Declarations. (Docket # 73.)

27     Delta Overton was a National Sales Director for Innovative from January

28                                        2

2006 until she resigned in May 2008.  (UF,[1] 1.)  Phytoceuticals, Inc., a company operated by Mostofa M. Omar, Ph.D ("Dr. Omar"), was one of Innovative's primary suppliers of skin care products.  (Pl.'s Opp. at 5.)  Starting in 2007, Innovative began to experience problems with Phytoceuticals, Inc. and Dr. Omar after Innovative learned that Phytoceuticals, Inc. was selling certain products under a different name over the Internet.  (Id.)  In 2008, while Innovative prepared to release a new line of products, it also decided to phase out its business dealings with Phytoceuticals, Inc. and Dr. Omar.  (Id.)  According to Plaintiff, Innovative's plans concerning the release of its new line and the information regarding the problems with Phytoceuticals and Dr. Omar were kept strictly confidential within Innovative's upper management, which included Delta Overton.  (Id.)

After Innovative ceased doing business with Phytoceuticals and Dr. Omar, Overton resigned from Innovative and initially planned to go into business with Dr. Omar.  (UF, 8.)  As Overton planned her resignation from Innovative, she also allegedly induced twelve of Plaintiff's account executives to also submit their resignations.  (FAC ¶ 19.)  Plaintiff argues that the loss of a large percentage of its sales force resulted in a substantial injury.  (FAC ¶ 19.)

Although Overton and the twelve account executives initially planned to go into business with Dr. Omar, Overton allegedly never completed the formation of the company.[2]  (UF, 8.)  The evidence presented shows that Overton worked with Dr. Omar initially in the start-up phase of their new venture.  This start-up phase consisted of emails sent between Dr. Omar and Overton planning to have a "sales force" for their new company in place by July 2008.  Dr. Omar and Overton's

---

[1]  "UF" denotes the parties' "Uncontroverted Facts" in support of or in opposition to the summary judgment motion.

[2]  Plaintiff disputes this assertion and argues that Overton authorized a filing with the North Carolina Secretary of State to form Phyto-C Skincare, LLC.  (UF, 8.)

1   plans never materialized.

2       By way of declaration, Plaintiff alleges that the twelve account executives

3   were induced to resign from Plaintiff's company based on false statements and/or

4   revelation of confidential information made by Defendant Overton.  Further,

5   Plaintiff's president and chief executive officer declares that Plaintiff was forced to

6   incur expenses in excess of $125,000 to replace the departing sales staff.

7   III.   <u>DISCUSSION</u>

8       **A.   Legal Standard: Summary Judgment**

9       Rule 56(c) requires summary judgment for the moving party when the

10  evidence, viewed in the light most favorable to the nonmoving party, shows that

11  there is no genuine issue as to any material fact, and that the moving party is

12  entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Tarin v. County of*

13  *Los Angeles*, 123 F.3d 1259, 1263 (9th Cir. 1997).

14      The moving party bears the initial burden of establishing the absence of a

15  genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24

16  (1986). That burden may be met by "showing – that is, pointing out to the district

17  court – that there is an absence of evidence to support the nonmoving party's

18  case." *Id.* at 325.  Once the moving party has met its initial burden, Rule 56(e)

19  requires the nonmoving party to go beyond the pleadings and identify specific facts

20  that show a genuine issue for trial.  *Id.* at 323-34; *Anderson v. Liberty Lobby, Inc.*,

21  477 U.S. 242, 248 (1968).  "A scintilla of evidence or evidence that is merely

22  colorable or not significantly probative does not present a genuine issue of material

23  fact." *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

24      Only genuine disputes – where the evidence is such that a reasonable jury

25  could return a verdict for the nonmoving party – over facts that might affect the

26  outcome of the suit under the governing law will properly preclude the entry of

27  summary judgment.  *Anderson*, 477 U.S. at 248; *see also Aprin v. Santa Clara*

28                                    4

*Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (the nonmoving party must present specific evidence from which a reasonable jury could return a verdict in its favor).

In *Celotex*, the Court explained that the nonmoving party must designate specific facts showing a genuine issue for trial.  Summary judgment is appropriate if a party, after adequate time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  477 U.S. at 322.

"[I]t is not [the task] of the district court, to scour the record in search of a genuine issue of triable fact.  [The courts] rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  *See also Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.").

**B.  Analysis**

1.  <u>Breach of Fiduciary Duty</u>

The elements of a claim for breach of fiduciary duty are: (1) the existence of a fiduciary relationship; (2) a breach of the fiduciary relationship; and (3) damage proximately caused by that breach. *Amtower v. Photon Dynamics, Inc.*, 158 Cal.App.4th 1582, 1659 (2008).  "Whether a fiduciary duty exists is generally a question of law.  Whether the defendant breached that duty towards the plaintiff is a question of fact." *Id*. (internal citations omitted).

Here, Defendant argues that Overton was not an officer or a director and thus owed no fiduciary duty to her employer.  Defendant also argues that Plaintiff has not put forth any evidence of damages.

5

An employer-employee relationship, without more, is not a fiduciary relationship. *Amid v. Hawthorne Cmty. Med. Group, Inc.*, 212 Cal.App.3d 1383, 1391 (1989).  Plaintiff argues that Overton was more akin to an officer than a mere employee.  Plaintiff points out that Overton oversaw the hiring, compensation adjustments, discipline, and firing of all members of the sales department, including sales representatives.  Plaintiff presents compelling arguments as to the existence of a fiduciary relationship between Overton and Plaintiff.

While the existence of a fiduciary relationship is generally a question of law, there are simply too many factual disputes for the court to discern whether Overton was in a fiduciary relationship.  Further, there are legitimate questions as to whether Overton breached a fiduciary duty when she allegedly induced other employees to leave Plaintiff's company.  In addition, Plaintiff has presented evidence of damages by way of a declaration from its president and chief executive officer.  And "[p]roximate cause . . . is generally a question of fact for the jury . . . that cannot be resolved on a motion for summary judgment unless from the facts only one reasonable conclusion could be drawn." *Pacific Sunwear of Cal., Inc. v. Olaes Enter., Inc.*, 167 Cal.App.4th 466, 484 (2008) (internal citations and quotations marks omitted).  Accordingly, summary judgment as to Claim One is DENIED.

### 2.    Breach of Non-Disclosure Agreement

A claim for breach of a non-disclosure agreement is essentially a breach of contract claim.  The elements for breach of contract are: (1) the existence of a valid contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) resulting damage to the plaintiff. *McKell v. Washington Mutual, Inc.*, 142 Cal.App.4th 1457, 1489 (2006).

Here, the contract is the non-disclosure and confidentiality agreement that Overton signed on September 23, 2005.  Plaintiff has presented evidence that

Overton was privy to certain information, such as Plaintiff's plans to launch a new product in July 2008.  Plaintiff has also presented evidence that Overton disclosed this information to Dr. Omar via various email messages.  It is also alleged that Overton knew secret information about employee salaries and product information that she used to induce the resignation of the twelve sales representatives.  While the causal link to the damages alleged is somewhat weak, Plaintiff has presented sufficient evidence to survive summary judgment as to its claim for breach of the non-disclosure agreement.

> 3.   Intentional Interference with Prospective Economic Advantage

"In order to prove a claim for intentional interference with prospective economic advantage, a plaintiff has the burden of proving five elements: (1) an economic relationship between plaintiff and a third party, with the probability of future economic benefit to the plaintiff; (2) defendant's knowledge of the relationship; (3) an intentional act by the defendant, designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's wrongful act, including an intentional act by the defendant that is designed to disrupt the relationship between the plaintiff and a third party." *Edwards v. Arthur Andersen, LLP*, 44 Cal.4th 937, 944 (2008) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153-54 (2003)).  "The plaintiff must also prove that the interference was wrongful, independent of its interfering character." *Id*. (citing *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376, 392-93 (1995)).  "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id*.  (citing *Korea Supply*, 29 Cal.4th at 1159).

Here, Plaintiff asserts that Overton is liable for the tort of intentional interference with economic advantage because Overton persuaded twelve of

Plaintiff's sales representatives to resign and join forces with Overton in a new venture.  As the California Supreme Court has noted, "it is not ordinarily a tort to hire the employees of another for use in the hirer's business."  *Reeves v. Hanlon*, 33 Cal.4th 1140, 1149 (2004) (citing *Buxbom v. Smith*, 23 Cal.2d 535, 547 (1944)).  "[H]owever, this general rule is subject to one significant limitation: 'This immunity against liability is not retained . . . if unfair methods are used in interfering in such advantageous relations.'" *Id*. (quoting *Buxbom*, 23 Cal.2d at 547).  Defendant's act must thus be "wrongful" as stated above.

Here, there are certainly genuine disputes as to whether Overton used "unfair methods" in inducing the sales executives to resign.  In fact, the case at bar raises many of the same issues discussed in *Reeves v. Hanlon*.  In *Reeves*, the California Supreme Court found an intentional interference when the "defendants purposely engaged in unlawful acts that crippled plaintiffs' business operations and caused plaintiffs' personnel to terminate their at-will employment contracts." *Reeves*, 33 Cal.4th at 1140, 1155.  Accordingly, following the reasoning in *Reeves v. Hanlon* and noting the existence of disputed facts surrounding this claim, Defendant's Motion for Summery Judgment is DENIED as to Plaintiff's claim for Intentional Interference with Prospective Economic Advantage.

### 4.  Misappropriation of Trade Secrets

Under California's Uniform Trade Secrets Act, "a prima facie claim for misappropriation of trade secrets requires the plaintiff to demonstrate: (1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff."  *CytoDyn of New Mexico, Inc. v. Amerimmune Pharmaceuticals, Inc.*, 160 Cal.App.4th 288, 297 (2008) (citations omitted); *see also* Cal. Civ. Code § 3426.1.

Here, Plaintiff has not sufficiently shown a causal link between a potential

misappropriation of a trade secret and the alleged damages.  There has been no evidence to suggest that disclosure of a "trade secret" brought about the resignation of the sales force.  And the only damages alleged are those stemming from Overton inducing employees to leave Plaintiff's company.  As such, the related damages are not connected to an alleged trade secret.  Accordingly, Overton is entitled to summary judgment on Plaintiff's misappropriation of trade secrets claim.

### 5.  Trade Libel

To establish liability for trade libel, a plaintiff must prove at least the following elements: (1) the defendant published a statement; (2) the statement tended to disparage the plaintiff's product or property; (3) the statement was provably false; (4) the defendant acted with knowledge that the statement was false or with reckless disregard for its falsity; and (5) the statement caused specific pecuniary damage to the plaintiff.  *See* 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 645, pp. 951-952; *Melaleuca, Inc. v. Clark*, 66 Cal.App.4th 1344, 1360-62 (1998).

Plaintiff has presented evidence in the form of declarations and press releases that contain questionable statements made by Overton about Plaintiff's business and management.  The damages claimed by Plaintiff, however, appear somewhat attenuated and separate from a trade libel claim.  Nonetheless, it appears that Plaintiff has presented enough factual evidence to prohibit summary judgment. Accordingly, Defendant's Motion is DENIED as to the trade libel claim.

### 6.  Defamation

"The tort of defamation involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." *Taus v. Loftus*, 40 Cal.4th 683, 720 (2007) (citations omitted).  Here, the declarations submitted by Plaintiff support its defamation

1    claim.  Further, the damages related to Plaintiff losing its sales force may be

2    attributed to statements made by Plaintiff Overton to induce the resignation of the

3    sales force.  Accordingly, Plaintiff survives summary judgment on its defamation

4    claim.

5                7.    Business and Professions Code § 17200

6          Section 17200 is applicable to "any unlawful, unfair or fraudulent business

7    act or practice and unfair, deceptive, untrue or misleading advertis[ment]."  Cal.

8    Bus. & Prof. Code § 17200.  "Section 17200 'borrows' violations of other laws and

9    makes them independently actionable as unfair competitive practices."  *Theme*

10   *Promotions, Inc. v. News America Marketing FSI*, 546 F.3d 991, 1008 (9th Cir.

11   2008) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1143

12   (2003)).  As Plaintiff explains in its opposition, its evidenciary submissions raise

13   triable issues of material fact as to whether Overton violated section 17200.

14   Further, because a number of Plaintiff's related claims remain viable, its section

15   17200 claim will also survive.  Thus, Defendant's Motion is DENIED as to the

16   section 17200 claim.

17

18

19

20

21

22   IV.   CONCLUSION

23         For the reasons discussed above, Defendant's Motion for Partial Summary

24   Judgment is GRANTED as to Plaintiff's claims for Misappropriation of Trade

25   Secrets.  Defendant's Motion is DENIED with regard to Plaintiff's claims for

26   Breach of Fiduciary Duty, Breach of Non-Disclosure Agreement, Intentional

27   Interference with Prospective Economic Advantage, Trade Libel, Defamation, and

28

1   violations of California Business and Professions Code § 17200.

2

3   DATED:      July 8, 2009

4

5

6   _____

7                   Hon. Otis D. Wright II
                   United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                         11